**CENTEX CONSTRUCTION COMPANY, Inc.**

v.

**David M. KENNEDY, Secretary of Treasury, United States Treasury Department, et al.**

Civ. A. No. 69–C–190.

United States District Court,
S. D. Texas,
Corpus Christi Division.

Aug. 23, 1971.

Gary Norton, Corpus Christi, Tex., for Centex Const. Co., Inc.

George Pain, Robert Perry, Houston, Tex., for Kennedy.

Fred Auforth, Corpus Christi, Tex., for Urquhart & Vanderhule.

James R. Sorrell, Corpus Christi, Tex., for First State Bank.

Joseph C. Garcia, pro se.

MEMORANDUM AND ORDER

OWEN D. COX, District Judge.

The Plaintiff in this suit, Centex Construction Company, Inc., brought this interpleader action and deposited in the Registry of this Court the sum of $9,929.23.

The first named Defendant, David M. Kennedy, Secretary of Treasury (hereafter referred to as "the Government") claims a first and prior lien on the money deposited with this Court to the extent of $8,605.61 plus interest accruing according to law. The lien notices were properly filed on and subsequent to July 22, 1969.

The Defendant First State Bank of Corpus Christi, having filed its financing statement covering an assignment of accounts and a security interest in contract rights with the Secretary of State of Texas on November 1, 1968, claims a prior lien on the same moneys.

The Government and the First State Bank of Corpus Christi have filed with this Court a stipulation approved as of the 12th day of July, 1971, which is being considered by this Court to determine, without regard to any of the other parties, which of the two named Defendants, the Government and the First State Bank of Corpus Christi, has the prior lien against the money deposited.

■ By the year of 1966, the Uniform Commercial Code had been or was in the process of being adopted in many states. It was adopted in Texas during the year of 1967. The term "security interest" was defined in this new code, § 1.201, as an interest in personal property or fixtures which secures the payment or performance of an obligation, and includes "contract rights" which are subject to Chapter 9 of such code. The old designations of "chattel mortgage" and "pledge" were dropped. The Uniform Commercial Code in Texas, V.T.C.A., Bus. & C., § 9.106, defines "contract rights" as being rights "not yet earned by performance." The chapter on "Secured Transactions," § 9.109, recites that the chapter applies "so far as concerns any personal property and fixtures within the jurisdiction of this state

"(1) to any transaction (regardless of its form) which is intended to create a security interest in personal property * * *, including * * *, accounts or contract rights; and also

(2) to any sale of accounts, contract rights or chattel paper."

and the provisions of § 9.318 which permits, under certain circumstances, modification of the contract, does not change the effectiveness of the right § 9.203 provides for the enforceability of a security interest in contract rights. These provisions of the uniform act establish "contract rights" as personal property in Texas.

Prior to the effective date of the Federal Tax Lien Act of 1966, a chattel mortgage or other lien covering some interest in property not yet "in esse" or "choate" could not prevail over a Federal tax lien arising out of and perfected under 26 U.S.C., §§ 6321, 6322 and 6323. This rule may still prevail.

■ In considering the Federal Tax Lien Act of 1966, Congress obviously recognized what was happening in the world of commercial financing, and, in amending 26 U.S.C., § 6323, changed certain of its provisions to conform to the language of the Uniform Commercial Code, and substituted "holder of security interest" for "mortgage and pledge." While the term "security interest" as defined in paragraph (h) (1) of said § 6323 differs in a number of respects from the way it is defined in the Uniform Commercial Code, nevertheless, it seems reasonable to say that what is properly the subject matter of a "security interest" under the Uniform Commercial Code would also be property under the Tax Lien Act of 1966, unless the expression in the tax lien act, "property in existence," carries forward the "choate" doctrine to such extent that property, because it is subject to a condition which cannot be violated without liability, is not "choate."

Perhaps at this point, a descriptive explanation of the use of "contract rights" is in order. In 81 Harvard Law Review 1369, at pages 1386 and 1387, an example is provided. Where the lending agency has no interest in a refrigerator, but only a security interest in the taxpayer-debtor's rights under a contract

for the future sale and delivery of the refrigerator, we are dealing with "contract rights." Now, suppose the lending agency duly files its financing statement covering such "contract rights" but, before actual delivery of the refrigerator, the government files a tax lien under the 1966 act. Under such circumstances, does the lending agency have a protected interest in the refrigerator when the taxpayer-debtor gets it? Prior to the 1966 act, it would not have.

But, if the Congress recognized the applicability of the Uniform Commercial Code by its use of the term "security interest," and we believe it did, then there is justification to say that "contract rights" as such are property and the lending agency taking a security interest therein, which has properly perfected it by filing, is protected.

Assuming, as we must, the contract is valid and binding and whomever has agreed to deliver the refrigerator in the future is obligated to do so and would be subject to a claim for specific performance or liable for the breach if no delivery is made, and, if the refrigerator is delivered, taxpayer debtor is obligated to pay for it, then, logically, such "contract rights" constitute personal property which is in existence, and effective so long as the lending agency is paying "money or money's worth." If protected by proper filing, a security interest in such property should have priority over a subsequently filed Federal tax lien. The fact that the taxpayer-debtor had not yet received the refrigerator nor paid for it, at the time the government filed its lien, should not defeat the lender's security.

Perhaps the Court has here drawn the line too thin. There is no case law that says it hasn't. However, there is abundant scholarly authority for the inference that Congress intended to protect security interests in "contract rights." See Harvard Law Review, supra, and the various articles on the subject which are cited in Continental Finance, Inc. v. Cambridge Lee Metal Co., 56 N.J. 148,

265 A.2d 536 and the references in such opinion to House Report No. 1884, Aug. 24, 1966, and Senate Report No. 1708, Oct. 11, 1966, regarding the Federal Tax Lien Act of 1966. Based upon the history of the act as it wended its way through the Congress, it seems plausible that the act would recognize as being property in existence, any binding contract which may involve future payments yet "unearned by performance."

The Fordham Law Review, Vol. 37, at page 564, in an article related to tax liens, says, "The Assistant Secretary of the Treasury, Stanley S. Surrey, under whose jurisdiction much of the drafting of the legislation took place, specifically indicated in his testimony before the House Ways & Means Committee that contract rights were an envisioned kind of security." This article further says, "It is submitted that as far as security interests are concerned, the act was intended to supersede completely the choate lien doctrine." Fordham Law Review is reassuring, and we will plunge ahead.

The case of Continental Finance, Inc., v. Cambridge Lee Metal Co., Inc., and United States of America, supra, which has been discussed by several scholars, at page 539, holds that Continental Finance was protected as to the accounts receivable assigned to it before the government placed its tax lien against Cambridge; but the Court said the Federal government's lien was prior to the security interest in future accounts receivable. However, it seems clear from the opinion that Continental Finance did not, in trying to fix a security interest in the future accounts receivable, treat them as "contract rights" under the Uniform Commercial Code. So, this case does not defeat First State Bank's contention in the case now before this Court.

The only other case which seems to be concerned, at least to some extent, with the present right to receive money in the future is Hammes v. Tucson Newspapers, Inc., 9 Cir., 324 F.2d 101 (1963). This case was decided before the Feder-

al Tax Lien Act was revised in 1966. The controversy arose out of a bankruptcy proceeding. The bankrupt had assigned to Tucson Newspapers the right to receive certain money. The Court held that the assignment took precedence over the Federal tax lien. The only language of the opinion which may have some significance is this statement, "The fact that the property subject to the lien is a present right to receive money in future does not make the lien inchoate, *at least* where the right is unconditional." (Emphasis added.) This seems to imply that a conditional "present right" may be choate. If there is such an implication, we admit, it leaves much to be desired.

We are not much inclined toward any Court's use of congressional committee reports to determine what the words used by the Congress actually mean. One of my law school professors said this was a very bad practice; that no matter what Congress may have intended to do, if it didn't do it, Congress should legislate to remedy the defect, not the courts. Of course, this was quite a while ago, and the courts have legislated considerably since the mid-1930's. In any event, giving due regard for the present day scholars' concern with such committee reports, and our own feeling that the use in the 1966 Federal Tax Lien Act of the term "security interest" carried with it the pertinent portions of the Uniform Commercial Code above discussed, the Court concludes that the lien of the First State Bank of Corpus Christi is prior to the tax lien of the United States.

It is, therefore, ordered that, as between the Secretary of the Treasury and First State Bank of Corpus Christi, the bank has a subsisting security interest in the money on deposit with this Court which is first and superior to the Federal tax lien under which the Secretary of the Treasury is claiming. This Court does not here pass on the priority of the security interest of said bank or of the Secretary as to the other claimants in this cause.

This cause is set for trial on all other issues on the 27th day of September, 1971, at 9:00 o'clock a. m.

The clerk will furnish counsel for all parties with a copy of this memorandum.