**NEVADA ROCK AND SAND COMPANY, a Nevada corporation,**
**Plaintiff,**

v.

**The UNITED STATES of America, DEPARTMENT OF the TREASURY INTERNAL REVENUE SERVICE, et al.,**
**Defendants.**

**Civ. No. LV–1566.**

United States District Court,
D. Nevada.

April 30, 1974.

Albright & McGimsey, Las Vegas, Nev., for plaintiff.

V. DeVoe Heaton, U. S. Atty., Las Vegas, Nev., for defendants.

## OPINION

ROGER D. FOLEY, Chief Judge.

### FACTS

This interpleader action was brought by Nevada Rock and Sand Company (NRSC) under the provisions of 28 U. S.C. §§ 1335, 1340 and § 7402 of the 1954 Internal Revenue Code. The facts, as developed by the pretrial order and stipulations of counsel at the trial, are undisputed:

On July 6, 1970, defendant Coop Oil Products, Inc. (COOP) assigned to defendant-claimant Witco Chemical Corporation (WITCO) all monies due or to become due from NRSC to COOP by reason of a certain designated contract between NRSC and COOP. Although WITCO was not required to render any performance under the NRSC–COOP contract, the assignment was not for the purpose of collection only. COOP's assignment to WITCO constituted a transfer of a significant part of the outstanding contract rights of COOP, and under the terms of the assignment NRSC was to pay the monies directly to WITCO. NRSC received notice of this assignment and consented to its terms on July 10, 1970. On October 1, 1970, the NRSC–COOP contract was completed and $10,810.30 had become due COOP; under the COOP–WITCO assignment this amount was to be paid to WITCO.

On October 26, 1970, the Internal Revenue Service (IRS) assessed taxes against COOP, and on February 4, 1971, a further assessment of taxes against COOP was made. Federal tax liens for these assessments were filed by the IRS with appropriate Nevada officials prior to any filing by WITCO, under Nevada's Uniform Commercial Code, of the COOP–WITCO assignment of COOP's contract rights. The Court will refer to the IRS liens as a single tax lien, inasmuch as neither the rights of the parties nor the issues presented are affected thereby, and simplicity of discussion is facilitated. Pursuant to the tax lien, the IRS sought to collect from NRSC the monies due and owing COOP under the NRSC–COOP contract.

Since both the IRS and WITCO claimed the funds due under the NRSC–COOP contract, NRSC filed an interpleader action on February 9, 1971, naming the IRS, WITCO and COOP as defendants, and deposited the entire fund due under the contract with the Court. Defendant COOP has not made an appearance in this action. NRSC has been dismissed as a party.

## ISSUES

■ 1. Did COOP, on October 26, 1970, and February 4, 1971, possess any property interest in the contract rights assigned to WITCO sufficient to allow the attaching thereto of a federal tax lien against COOP?[1]

2. If a federal tax lien has so attached, is this lien entitled to priority over the claims of the assignee, WITCO, to such funds?

## CONCLUSIONS

1. Yes.
2. Yes.

## DISCUSSION

1. IS THE ASSIGNMENT OF CONTRACT RIGHTS THAT BECOME DUE AND OWING PRIOR TO THE ASSESSMENT AND FILING OF A TAX LIEN AGAINST THE ASSIGNOR SUFFICIENT TO DIVEST THE ASSIGNOR OF SUCH PROPERTY SO AS TO FORECLOSE ATTACHMENT OF THE TAX LIEN UPON IT, EVEN THOUGH THE ASSIGNMENT IS NOT PERFECTED UNDER THE STATE'S UNIFORM COMMERCIAL CODE PROVISIONS FROM CLAIMS OF LIEN CREDITORS HAVING NO KNOWLEDGE OF THE ASSIGNMENT?

The principal issue discussed herein involves the frontiers of our society's fundamental notion of private ownership of property. The issue is presented within the framework of unsettled judicial decisions, new concepts embodied in the Uniform Commercial Code (U.C.C.), and recently amended tax statutes. The problem of resolving this issue is exacerbated by the fact that the claimants in this case do not directly clash. Arguing from the same initial premise, but from entirely different perspectives as regards the impact of the U.C.C., the role in which the IRS is to be cast, and the definition of how "property right" is to be defined, claimants provide two diverging planes of thought, each leading to its own, judicially supported conclusion. Coherent discussion of this issue, then, is in itself a formidable task.

■ A. *The Initial Premise*: Title 26, Section 6321, of the United States Code, provides that if a person liable for any tax refuses to pay that tax after demand, the amount thereof, including interest, penalty or addition to such tax "shall be a lien in favor of the United States upon all *property* and *rights to property*" belonging to such person. 26 U.S.C. § 6321 (emphasis added).[2] In Aquilino v. United States, 363 U.S. 509, 512–514, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960), the Supreme Court stated:

> "The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach. In answering that question, both federal and state courts must look to state law . . . However, once the tax lien has attached to the taxpayer's state-created interests, we enter the province of federal law, which we have consistently held determines the priority of competing liens asserted against the taxpayer's 'property' or 'rights to property.' . . . This approach strikes a proper balance between the legitimate and traditional interest which the State has in creating and defining the property interests of its

---

1. Under 26 U.S.C. § 6322, a tax lien pursuant to § 6321 arises at the time the assessment is made. The lien attaches to all property and rights to property at the time it arises. See United States v. Fidelity Philadelphia Trust Co., 459 F.2d 771 (3rd Cir. 1970); Kuffel v. United States, 103 Ariz. 321, 441 P.2d 771 (1968). Thus, the date upon which the tax lien will attach, if at all, is the date of the assessment. See Bank of Nevada v. United States, 251 F.2d 820 (9th Cir. 1958), cert. denied 356 U.S. 938, 78 S. Ct. 780, 2 L.Ed.2d 813 (1958).

2. This provision is unchanged from its predecessor (IRS Code of 1939, § 3670) and was not altered by the 1966 Federal Tax Lien Act.

citizens, and the necessity for uniform administration of the federal revenue statutes."

In the companion case, United States v. Durham Lumber Co., 363 U.S. 522, 80 S. Ct. 1282, 4 L.Ed.2d 1371 (1960), the Court made it clear that to the extent, under applicable state law, the taxpayer has no property interests in the funds sought to be subjected to a tax lien, there is nothing to which the lien can attach.[3] Both WITCO and the IRS accept this premise: the tax lien can attach to the NRSC fund only if Nevada law establishes COOP's interest in that fund to be "property" or "rights to property."

B. *WITCO'S Argument:* WITCO urges a traditional point of view. It argues that the IRS has rights that can rise no higher than those of the taxpayer whose right to property is sought to be levied upon. United States v. Winnett, 165 F.2d 149, 151 (9th Cir. 1947); Stuart v. Willis, 244 F.2d 925, 929 (9th Cir. 1957). And the rights of the IRS must be determined on the basis of the condition of the property as it exists at the time the tax lien arises. Board of Sup'rs of La. State Univ. v. Hart, 210 La. 78, 26 So.2d 361, 364 (1946). WITCO asserts that at this crucial juncture, COOP was already bound by a prior valid assignment to WITCO of the monies due from NRSC. See Jones v. P. W., L. & F. Co., 13 Nev. 359, 373 (1878) (between the parties, the assignment is complete the moment it is made). Even though WITCO did not file the assignment as required by the U.C.C. (NRS § 104.9302) to protect its interest against third party creditors (NRS § 104.9301), the assignment is neverthe-

less binding between the parties. See NRS § 104.9201; United States v. Lebanon Woolen Mills Corp., 241 F. Supp. 393, 401 (D.N.H.1964) (recording statute is irrelevant re: perfection of interest against party to the transaction). Therefore, WITCO concludes, COOP no longer had any property or rights to property held by NRSC and there was nothing upon which the tax lien could attach. See In re Halprin, 280 F.2d 407 (3rd Cir. 1960); Monroe Banking & Trust Co. v. Allen, 286 F.Supp. 201 (N.D.Miss.1968); United States v. Lebanon Woolen Mills Corp., supra; United States v. Lester, 235 F. Supp. 115 (S.D.N.Y.1964); Transmix Concrete of Rockdale v. United States, 142 F.Supp. 306 (W.D.Tex.1956); Central Surety & Insurance Corp. v. Martin Infante Co., 164 F.Supp. 923 (D.N.J. 1958), affirmed 272 F.2d 231 (3rd Cir. 1959); Hartford Accident and Indemnity Co. v. State, 85 S.D. 608, 187 N.W.2d 663 (1971); Pitcher & Co. v. Ralph Nay Constr. Co., 103 N.H. 357, 172 A.2d 360 (N.H.1961); Board of Sup'rs of La. State Univ. v. Hart, supra.

C. *The IRS'S Argument:* The IRS develops its argument through the use of the U.C.C., adopted in Nevada in 1965. NRS Article 8, Chap. 104. First, looking to Article 9 of the U.C.C., the IRS notes that although that article does not apply to an assignment of contract rights for the purpose of collection only or to an assignment of such rights where the assignee is also to perform under the contract (NRS § 104.9104(6)), it does apply to:

" . . . any transaction (regardless of its form) which is intended to

---

3. In *Durham Lumber*, the Supreme Court affirmed the holding of the Fourth Circuit (United States v. Durham Lumber Co., 257 F.2d 570 (4th Cir. 1958)) that because the general contractors, under North Carolina law, had no property interest in the amount due under the general construction contract, except to the extent that such amount exceeded the aggregate of all amounts due to subcontractors, the Government, pursuant to its tax lien, could recover only so much of the construction price as would remain un-

paid after deduction of a sum sufficient to pay the subcontractors.

The Ninth Circuit has rephrased in the affirmative the prerequisite to attachment of a tax lien:

" . . . If state law raises the taxpayer's interest to the status of property or rights to property, federal law will cause a lien to attach to that interest."

(United States v. Overman, 424 F.2d 1142, 1144 (9th Cir. 1970).)

create a security interest in . . . accounts or contract rights;[4]

" . . . any sale of accounts, contract rights or chattel paper( ;)

" . . . (and) to security interests created by contract including pledge (or) assignment . . . intended as security."

(NRS § 104.9102(1)(a) and (b), (2).) The IRS concludes from this language that whether the WITCO assignment is considered a sale of or security interest in the COOP accounts or contract rights, the transaction is within the scope of Article 9.[5] See United States v. Trigg, 465 F.2d 1264, 1268 (8th Cir. 1972); L. B. Smith, Inc. v. Foley, 341 F.Supp. 810, 813 (W.D.N.Y.1972); Centex Construction Co. v. Kennedy, 332 F. Supp. 1213, 1214–1216 (S.D.Tex.1971); Standard Lumber Co. v. Chamber Frames, Inc., 317 F.Supp. 837, 839 (E.D. Ark.1970).

Second, the IRS points to the fact that Article 9 is not concerned with traditional questions of title, but, rather, directs its provisions to questions of "rights, obligations and remedies." See NRS § 104.9202; Annotation, 30 A.L.R.3rd 9, 31 and cases cited at n. 16. As regards the rights of third parties, NRS § 104.9301(1)(b) provides in relevant part:

"(1) . . . an unperfected security interest is subordinate to the rights of:

"* * * * * *

"(b) A person who becomes a lien creditor without knowledge of the security interest and before it is perfected."

This provision is the focal point of the IRS's argument. Under NRS § 104.-9302, a financing statement must be appropriately filed to perfect all security interests except in certain specified situations. Since none of the exceptions to filing are applicable to the WITCO assignment,[6] that "security interest" (within the meaning of the U.C.C.) must be considered "unperfected" for purposes of NRS § 104.9301. Under NRS § 104.9301(3), a "lien creditor" is a creditor who "has acquired a lien on the property involved by attachment, levy or the like." This definition is broad enough to include the IRS once the IRS filed its assessment against COOP in the instant case. See United States v. Trigg, supra, 465 F.2d at 1268; L. B. Smith, Inc. v. Foley, supra, 341 F.Supp. at 813–814; In re Farr Western Asphalt Paving, Inc., 69–2 U.S. T.C., P. 9646 (D.Ariz.1969).

Third, from the above statutory interpretation and reasoning, the IRS concludes that because it is entitled to pri-

4.  Nevada Revised Statutes § 104.9106 defines "account" as "any right to payment for goods sold . . . or for services rendered which is not evidenced by an instrument or chattel paper." "Contract right" is defined in that section as "any right to payment under a contract not yet earned by performance and evidenced by an instrument or chattel paper." Hence, a "contract right" is right to payment to be earned in the future and, once earned, the contract right is extinguished and an "account" arises. The distinction may have little significance (the 1971 Editorial Board for U. C.C. recommended that the term "contract right" be eliminated as unnecessary), they are distinct categories of property which may serve as collateral in secured transactions.

5.  The IRS feels that this conclusion is also buttressed by the definition of "secured par-

ty" found in NRS § 104.9105, subd. 1(i). (Government's Post Trial Brief, p. 5.) Under this definition, a "secured party" includes "a person to whom accounts, contract rights or chattel paper have been sold."

6.  The only exception which even approaches a characterization of the WITCO-COOP assignment is NRS § 104.9302, subd. 1(e), which does not require filing to perfect:

"An assignment of accounts or contract rights which does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts or contract rights of the assignor."

WITCO has stipulated, however, that the assignment it received from COOP did transfer a significant portion of the contract rights of COOP. In fact, this is the basis of WITCO's "no property" argument.

ority over WITCO under Article 9 of Nevada's U.C.C., whatever the nature of the "property interest" which remained with COOP after the assignment but prior to any filing of that assignment by WITCO, this "property interest" was sufficient to allow the attaching of a federal tax lien. See United States v. Trigg, supra, 465 F.2d at 1269; and cf. L. B. Smith, Inc. v. Foley, supra, 341 F. Supp. at 813–814; In re Farr Western Asphalt Paving, Inc., supra.

D. *Background:* Resolution of this seeming impasse of position requires an understanding of the judicial and legislative developments in the last fourteen years which have affected the law regarding federal tax liens. As will be seen, the development of tax lien priority and the development of the requirement that the taxpayer have "property" to which the lien can attach are interrelated judicial developments. Crisp distinction between these concepts has not been uniformly observed, necessitating the breadth of this discussion. Consideration of the pertinent tax lien developments is perhaps best begun by the observation that:

> ". . . Quite by accident, at the same time that the UCC provisions on priorities were being written, the Supreme Court was forced to evolve a set of priority rules for tax liens. On hindsight, it is not surprising that both the Court and the UCC draftsmen produced some confusion in the process . . . " (Coogan, "The Effect of the Federal Tax Lien Act of 1936 Upon Security Interests Created Under the Uniform Commercial Code," 81 Harv.L.Rev. 1369, 1377 (1968).)

(i) *Judicial Developments: The "Choate" Doctrine and the "No Property" Rule:*

In the field of federal tax law, the Supreme Court has revived the term "choate" in developing a doctrine for establishing priority among nonfederal claimants and IRS tax liens.

> "As security interests tended to become less fixed as to the property covered and the indebtedness protected, the Court began insisting that any lien in competition with a federal priority or tax lien be more fixed—more 'specific' or 'choate'—than had been generally supposed necessary. Up until United States v. Security Trust and Savings Bank (340 U.S. 47, 71 S.Ct. 111 [95 L.Ed. 53] (1950)) the choate and perfected lien doctrine defined the judicially created exception to the apparently absolute priority given by the federal insolvency priority statute, R. S. 3466. In Security Trust and Savings Bank it was applied for the first time in a case involving the tax lien priority statute.[7]

> " . . .

> " . . . Until 1958, there had been no Supreme Court case where the choate doctrine was applied to liens created by contract . . . In United States v. R. F. Ball Construction Co. (355 U.S. 587, 78 S.Ct. 442 [2 L.Ed.2d 510] (1958)), an enigmatic per curiam, the Court apparently applied the doctrine to a lien created by contract of the parties, an assignment of receivables.[8] Ball could be construed to have held that a lien which was indefinite at any point as to the exact amount of debt protected or

---

7. In *Security Trust and Savings Bank*, the Court held that a federal tax lien is prior in right to a state lien where the federal tax lien was recorded subsequent to the attachment of the state lien but before the state creditor obtained judgment. Of importance to the Court's opinion was the fact that the California Supreme Court had previously described the state's lien as contingent—or not "choate." 340 U.S. at 50.

8. In *Ball*, a contractor had assigned to a surety present and future funds due under a particular contract in exchange for a guarantee of the contractor's performance. This assignment was prior to the attachment of the federal tax lien. The per curiam decision of the Supreme Court stated only that the competing interest of the surety was inchoate.

identity of the property covered was inchoate.

"After Ball, there was a flurry of cases in which one security interest after another was subordinated to a tax lien [as being inchoate]." (Coogan, supra, 81 Harv.L.Rev. at 1377–79 (footnotes omitted).)

*Ball* created great doubt as to whether any security interest in accounts receivable or contract rights could successfully compete with a federal tax lien. (Id. at p. 1379.) While advancements by creditors often enhanced the value of the taxpayer's property, the tax lien could undermine the security interest and appropriate without compensation that added value.

"the harsh effects of the choateness doctrine were somewhat mitigated (at this point) by judicial adoption of what has been termed the 'no property' rule . . . See, e. g., Aquilino v. United States [supra]; United States v. Durham Lumber Co. [supra]."

(Note, "Choateness and the 1966 Federal Tax Lien Act," 52 Minn.L.Rev. 198, 203 n. 27 (1967).)

Under this rule, as noted previously,[9] if the taxpayer is not deemed under local law to have "property" or "rights to property," there is nothing upon which the federal tax lien can attach. Justice Harlan felt, in his dissenting opinion in *Aquilino*, that the "no property" rule was inconsistent with results previously reached by the Court in applying the choate doctrine (Aquilino v. United States, supra, 363 U.S. at 516 (Harlan, J., dissenting)), and that:

" . . . If the federal standard of choateness is thought to be an undesirable restriction on the States' freedom to regulate property relationships, the cases establishing that standard should be expressly overruled and not emasculated by dubious distinctions." (Id. at 521.)

One year after the inception of the "no property" rule, the Supreme Court, in a short per curiam, appeared to return to a strict "choate" analysis. In Crest Finance Co. v. United States, 368 U.S. 347, 82 S.Ct. 384, 7 L.Ed.2d 342 (1961), vacating 291 F.2d 1 (7th Cir. 1961), a subcontractor had assigned amounts due under its subcontract as security for loans. No recording was required, under state law, to perfect this assignment. When the tax lien arose, the contract had been completed but determination of the exact amount due required engineering measurement. The prime contractor had made payments directly to the assignee. On the basis of *Ball*, the Tenth Circuit held the assignee's interest inchoate. The Supreme Court vacated in view of the Solicitor General's concession that *Ball* did not compel a finding of inchoateness. Nowhere was the "no property" rule mentioned. *But from Crest and Ball, it seems that, under the judicial doctrine, a competing nonfederal claim is choate and entitled to priority if, at the time the federal tax lien arises, the performance of the secured party is complete, the accounts receivable are due and the accounts are definitely ascertainable.* See United States v. Pioneer American Ins. Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963); Note, 52 Minn.L. Rev., supra, at 202; Annotation, 94 A. L.R.2d 748, 790.

In light of the apparent fleeting moment of the "no property" rule, in terms of Supreme Court consideration, it is not surprising to find that lower courts have not uniformly addressed themselves to this "threshold question," but have in many cases proceeded directly to a discussion of choateness and determinations of priority. See Annotation, 94 A.L.R.2d, supra, at 790–799 and cases discussed therein. For example, in Hammes v. Tucson Newspapers, Inc., 324 F.2d 101 (9th Cir. 1963), the Ninth Circuit held, without discussion of the "no property" rule, that an assignee's

---

9. See text accompanying note 2, supra.

right under an assignment of principal payments due under a land sale agreement was choate and entitled to priority over a federal tax lien where the identity of the assignee, the property subject to the assignment and the amount of the principal due were established prior to recordation of the tax lien. In a subsequent case, however, the Ninth Circuit has specifically accepted the "no property" rule as posing the initial question in tax lien cases. See United States v. Overman, 424 F.2d 1142 (9th Cir. 1970).[10]

Thus, the "no property" rule is an outgrowth of the choate doctrine, but has not been uniformly applied. *Ascertaining a "property interest" is determined by reference to state law. The choate doctrine presents an issue of federal law.* United States v. Pioneer American Ins. Co., supra, 374 U.S. at 88–89. *To be "choate," the claim must be "specific" and "perfected" in the federal sense* (id.; see also 9 Mertens Law of Federal Income Taxation, § 54.42, p. 126), *however, state law is to be consulted.* The Supreme Court noted in *Security Trust and Savings Bank*, supra, 340 U.S. at 49–50, that:

" . . . *although a state court's classification of a lien as specific and perfected (choate) is entitled to weight, it is subject to reexamination by this Court. On the other hand, if the state court itself describes the lien as inchoate, this classification is 'practically conclusive.'* " (Emphasis added.)

(ii) *Legislative Developments: The U.C.C. and the FTLA:*

The Federal Tax Lien Act of 1966 (FTLA) is an effort on the part of Congress to conform the tax lien laws to concepts developed in the U.C.C. (see H.R.Rep. No. 1884, 89th Cong., 2d Sess. I (1966)), "in order to take into account the changed nature of commercial transactions since 1913" (9 Mertens Law of Federal Taxation, § 54.66.14, p. 304). In doing so, however, Congress addressed itself only to 26 U.S.C. § 6323.[11] Section 6321, the statutory basis for the "no property" rule, was left unchanged. Nevertheless, as discussed below, the FTLA and its relationship with the U.C.C. is viewed by many as establishing crucial criteria for determining whether a security interest will be good against a federal tax lien.

Initially, it should be noted that the FTLA codifies much of the choateness doctrine.

"Under decisions of the Supreme Court a mortgagee, pledgee, or judgment creditor is protected at the time notice of the tax lien is filed if the identity of the lienor, the property subject to the lien, and the amount of the lien are all established at such time . . . Except as otherwise provided, subsection (a) of new section 6323 retains this basic rule of Federal law . . ."

(H.R.Rep. No. 1884, supra, at 35.)

An important innovation in the FTLA, however, is the incorporation into Section 6323(a) of the phrase "holder of a security interest." [12] This section now provides, in pertinent part, that "(t)he lien imposed by section 6321 shall not be

10. See note 3, supra.

11. Prior to adoption of the FTLA, 26 U.S.C. § 6323 provided that a federal tax lien was not valid as against any mortgagee, pledgee, purchaser or judgment creditor until notice of the tax lien was filed. The purpose of this section was to afford protection to these named classes against secret tax liens when the interest of such a creditor is obtained after the tax lien attaches but before notice of the tax lien is filed. See United States v. Gilbert Associates, Inc., 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (1953).

12. A description of Section 6323 as it existed prior to adoption of the FTLA is given in note 11, supra.

"  . . . The substitution of 'holder of a security interest,' which includes mortgagees and pledgees, was intended to replace the former terms with a more general term used in the Uniform Commercial Code." (Note, 52 Minn.L.Rev., supra, at 213.)

See also 9 Mertens Law of Federal Income Taxation, § 54.66.14, p. 305.

valid as against any purchaser (or) holder of a security interest" until notice of the tax lien has been appropriately filed. During the formulation of this modification,

> ". . . (t)he Treasury was insistent that some standard of perfection be imposed upon security interests, since those that had not achieved such dignity that they would be protected under local law were not thought worthy of protection against federal tax liens. But against whom must the interest be 'protected'? In whose hypothetical shoes is the tax collector to stand? . . . (F)ollowing substantially the pattern of the Bankruptcy Act, the federal tax collector was, with respect to security interests, placed in the shoes of a holder of 'a subsequent judgment lien arising out of an unsecured obligation.' "

(Plumb, "Federal Liens and Priorities —Agenda for the Next Decade," 77 Yale L.Jour. [2nd of 3 parts] 605, 658 (1968) (emphasis supplied; footnotes omitted).)

Hence, the definition of "security interest" in Section 6323(h)(1) provides:

> "The term 'security interest' means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, *the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation,*[13] and (B) to the extent that, at such time, the holder has parted with money or money's worth." (Emphasis added.)

As can be seen from the emphasized portion above, the FTLA definition of "security interest" is in part dependent upon state law. Protection against a "subsequent judgment lien" holder is substantially the same as protection against the U.C.C. § 9–301(3) "lien creditor."[14] And to obtain protection against a lien creditor, the security interest must, generally, be filed. See, e. g., NRS §§ 104.9301 and 104.9302. Significantly, however, a security interest may be perfected under the U.C.C. prior to the time it would be considered "choate," as that term has been judicially defined.[15] Thus, although the issue has not been authoritatively settled, it appears that as far as "security interests" are concerned, the FTLA has superseded the choate lien doctrine. See

13. Prior to 1966, the Courts:
   ". . . generally adopted the view that since tax liability is not a matter of voluntary contract, the federal tax collector is not the kind of reliance creditor the (local state) recording acts were designed to protect. (Citing United States v. Lebanon Woolen Mills, 241 F.Supp. 393, 398 (D.N. H.1964).) As a general proposition, however, Congress rejected that viewpoint in the 1966 Act, apparently on the ground that, while the Government does not voluntarily extend credit, it may rely upon the record in deciding what collection action to take. Accordingly, a requirement of perfection against subsequent judgment liens was incorporated in the federal statutory definition of a 'security interest.' " (Plumb, supra, 77 Yale L.Jour. at 668– 669.)

14. As discussed supra in the text, a "lien creditor" under the U.C.C. is a creditor who "has acquired a lien on the property involved by attachment, levy or the like." NRS § 104.9301(3).
   ". . . Earlier versions of the (FTLA) bill used the lien creditor language of the . . . UCC. Apparently, in an effort to conform the language of other parts of section 6323 to that of subsection (a), where 'judgment lien creditor' is not inappropriate, the language was changed . . ." (Coogan, supra, 81 Harv.L.Rev., at 1389.)
   The terms, however, have been characterized as synonymous. See Note, 52 Minn.L.Rev., supra, at 209.

15. For example:
   "Obligations covered by a security agreement may include future advances whether or not the advances are given pursuant to commitment. [U.C.C. § 9–204(5).] In such a case the lien is inchoate because the amount of the lien is not fixed and definite . . ." (Note, 52 Minn.L.Rev., supra, at 209 n. 60.)

Centex Construction Co. v. Kennedy, 332 F.Supp. 1213, 1214–1215 (S.D.Tex. 1971); Creedon, "Assignments for Security and Federal Tax Liens," 37 Ford.L. Rev. 535 (1969); Note, 52 Minn.L.Rev., supra, at 217. Phrased differently, Congress has substituted its own definition of "choate" in the area of security interests. See H.R.Rep. No. 1884, supra, at pp. 2 and 35 (holders of "security interests," as defined in 26 U.S.C. § 6323(h)(1), have priority whether or not they are in all other respects definite and complete when the tax lien is filed).

Further, the FTLA provides a definition, for the first time, of a "purchaser" who is to receive the protection of § 6323:

> "The term 'purchaser' means a person who, for adequate and full consideration in money or money's worth, acquires an interest . . . in property which is valid under local law against subsequent purchasers without actual notice."

(26 U.S.C. § 6323(h)(6).)

In cases of a purchase of contract rights or accounts, the U.C.C., with some exceptions,[16] requires that notice of the transaction be filed if protection against a subsequent bona fide purchaser is to be accorded. See, e. g., NRS §§ 104.-9301(1)(d), (2), and 104.9302. This, too, enlarges upon the choate doctrine, or supersedes it. See Coogan, supra, 81 Harv.L.Rev. at 1382 n. 46. In the instant case, then, the relative priority accorded the tax lien, as determined by the FTLA and the U.C.C., will be the same whether the WITCO–COOP transaction is considered a sale or a security arrangement.

E. *Analysis:* It has been stated that the FTLA was not intended to remove the threshold requirement that the taxpayer have "property" or "rights to property." See In re Rosenberg's Will, 62 Misc.2d 12, 308 N.Y.S.2d 51, 59 (Surr.Ct., Kings County 1970) (noting that the authors of the law review articles cited in the instant discussion agree in this regard). Nevertheless, the FTLA has provided the answer to what has become a crucial question in resolving this threshold issue: In what role is the IRS to be cast in determining whether the taxpayer has sufficient "interests in property" for the tax lien to attach?

Ascertainment of whether a taxpayer has an "interest in property" has been the subject of a variety of judicial approaches in delineating the particular body of state law that is to be consulted. In many cases, the determinative factor in isolating applicable state legal principles is the characterization given the position of the IRS. See, e. g., Allan v. Diamond T Motor Car Co., 291 F.2d 115 (10th Cir. 1966) (IRS is an "execution creditor" in determining whether taxpayer has a property interest which may be subject to the tax); United States v. Lester, 235 F.Supp. 115 (S.D.N.Y.1964) (rights of IRS equivalent to that of taxpayer in determining if taxpayer has an interest in property, IRS is not deemed a creditor for such purpose); United States v. Trigg, supra, 465 F.2d 1264 (IRS qualifies as U.C.C. "lien creditor" and is entitled to rights against an unperfected security interest, hence tax lien may reach such property). While the pre-FTLA approach was, in all situations presented, predominantly that of placing the IRS in the shoes of the taxpayer (see 9 Mertens Law of Federal Taxation, § 54.52, pp. 193–94 and cases cited at n. 64), post-FTLA cases have predominantly characterized, in appropriate situations, the IRS as a U.C.C. "lien creditor" (see, e. g., United States v. Trigg, supra; L. B. Smith, Inc. v. Foley, supra). This shift of focus in circumstances where the U.C.C can be considered relevant to the issue presented is not startling.

In modernizing the lien laws, Congress has clearly indicated that the advancements of the U.C.C. are to be in-

---

16. See, e. g., the exception discussed in note 5, supra.

corporated into the field of tax collection. The U.C.C., however, does not speak in terms of title any more than it speaks in terms analogous to the judicial doctrine of choateness. In delineating that point at which property of an individual is deemed to have been sufficiently alienated, in transactions within the terms of Article 9, such that subsequent claimants, whose claims are derived through that individual, are not entitled to look to the transferred property for satisfaction of their claims, the U.C.C. has devised a priority system based in large measure on notice filing. The "choate" doctrine was employed to "describe that quality of completeness, perfection, and specificity of which an intervenor's interest must partake in order not to be considered a part of the debtor's property and subject to the lien for the debtor's unpaid taxes." United States v. Lebanon Woolen Mills Corporation, 241 F.Supp. 393, 400 (D.N.H. 1964). With adoption of the FTLA, the judicial approach to this delineation was replaced with the U.C.C. approach. Not unexpectedly, the state law question as to "property interest"—a by-product of the choate doctrine—can also be readily answered by reference to the U.C.C. The only impediment to such use of the U.C.C. is isolating the position to be accorded the IRS; is it to be that of the taxpayer-transferor, or that of a third party claimant?

■ The public policy which seeks uniformity of tax lien application while according the states proper authority to regulate the incidents of property (see Aquilino v. United States, supra) suggests that assignment of the role to be assumed by the IRS in its tax collection is a federal question. The goal of uniformity can thus be advanced without undue injury to state interests. Congress, in looking at this issue as it arises when purchasers or holders of a security interest compete with tax collection efforts, relegated the IRS to the position of a subsequent purchaser without notice or a judgment lien creditor. 26 U.S.C. § 6323(h)(1) and (6). In such circumstances, then, the federal question has been answered by the FTLA.

In the instant case, WITCO places emphasis on the cogent, but pre-FTLA, reasoning in United States v. Lebanon Woolen Mills Corporation, supra, 241 F. Supp. at 399–401. In *Lebanon* the Court, in discussing the federal issue of priority, developed concerns which influenced many Courts during that period. These concerns mingled with the considerations attending resolution of the "no property" inquiry, as *Lebanon* itself demonstrates. Hence, the impact of the FTLA upon these concerns is also, in part, explanatory of the post-FTLA judicial shift in focus. The *Lebanon* Court argued, in substance, that the U. C.C. was not intended to be used, nor did policy support its use, for the benefit of a nonreliance creditor such as the IRS. (Id. at 399.) Congress, however, has clearly rejected this argument and has given the U.C.C. an integral position in the tax lien laws. The Court argued that "the Government can assert no rights with respect to property which could not have been asserted by the taxpayer." (Id.) Yet, as a "judgment lien creditor" under the FTLA, the IRS may look to the U.C.C. for a definition of its rights. The Court also discusses the choate doctrine, concluding that:

> "While compliance with state recording statutes may in some instances . . . be considered a necessary prerequisite to the establishment of the choateness . . . compliance with [such a statute] in the present case does not serve to add one whit of perfection . . ."
> (Id. at 401.)

But the FTLA now statutorily denotes, through the use of the U.C.C., when compliance with a recording requirement is necessary to perfect a competing interest. This also answers the Court's final argument that Congress has not required that interests of a subsequent purchaser, mortgagee, pledgee, or judgment creditor be recorded in order to gain priority over a tax lien. (Id.)

■ Viewing the IRS as a third party lien creditor, then, the argument presented by the IRS in this case, as outlined above, must prevail. With the IRS entitled to priority [17] under Nevada's U.C.C., whatever "interest in property" is deemed present in COOP regarding the accounts denoted in the unrecorded WITCO assignment, that interest granted by state law is adequate to negate the argument that the accounts were sufficiently alienated from COOP to avoid attachment of the tax liens. See United States v. Trigg, supra, 465 F.2d at 1268–1269; L. B. Smith, Inc. v. Foley, supra, 341 F.Supp. at 813–814; and cf. Standard Lumber Company v. Chamber Frames, Inc., 317 F.Supp. 837 (E.D.Ark.1970).

**2. IS A FEDERAL TAX LIEN WHICH HAS ATTACHED TO ACCOUNTS RECEIVABLE ENTITLED TO PRIORITY OVER THE CLAIM TO THOSE FUNDS OF AN ASSIGNEE WHO HAS FAILED TO PERFECT HIS ASSIGNMENT UNDER THE STATE'S U.C.C. PROVISIONS PRIOR TO FILING OF THE TAX LIEN?**

WITCO has confined its arguments to the "no property" issue and has, apparently, conceded that if that issue is decided adversely to its position, the tax lien is entitled to priority. WITCO is correct in this assessment.

■ Determination of the relative priority of a federal tax lien is to be decided by federal law. See Aquilino v. United States, supra. As extensively discussed above, the federal tax lien priority statute, 26 U.S.C. § 6323, now provides that if the "holder of a security interest" (26 U.S.C. § 6323(a)) is to be protected, the interest must have become "protected under local law against a subsequent judgment lien" at the time the

tax lien is filed (26 U.S.C. § 6323(h)(1)). Under Nevada's U.C.C. (NRS §§ 104.9301 and 104.9302), WITCO's unrecorded assignment was not so perfected at the time of the tax lien filing, and thus is not protected from the tax lien. The result is the same even if WITCO is considered a "purchaser," since substantially identical U.C.C. provisions would be employed to ascertain perfection (see discussion in part 1. D. (ii) above).

■ The mere attachment of the Government's tax lien gives it a fully perfected claim. Bank of Nevada v. United States, 251 F.2d 820 (9th Cir. 1958).

" . . . (H)olders of unperfected interests remain subject to the 'first in time is first in right,' priority standard. Under that standard, unperfected . . . interests are subordinate to a federal tax lien."

(United States v. Trigg, supra, 465 F.2d at 1270; see also United States v. New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954).)

It is the first lien to become "choate" that prevails. United States v. Pioneer American Ins. Co., supra. At the very least, state law is to be consulted and will be "practically conclusive" if it deems the interest competing against the tax lien to be unperfected. See United States v. Security Trust and Savings, supra. Thus, under this approach, WITCO's unrecorded assignment, under Nevada's U.C.C., is "inchoate" and subordinate to the tax lien. As discussed above, however, the FTLA has apparently replaced or substantially modified the choate lien doctrine by providing, for certain categories of interests, a definitional approach to ascertainment of whether such interests are "perfected."

---

17. It should be noted that the IRS is entitled to priority over the unrecorded assignment only if it became a lien creditor *without knowledge* of the assignment. NRS § 104.-9301(1)(b). The burden of proof rests upon WITCO, however, to establish such knowledge on the part of the IRS. See Allan v. Diamond T Motor Car Company, 291 F.2d 115, 118 (10th Cir. 1961); In re Komfo Products Corp., 247 F.Supp. 229 (D.C. Pa.1965); Levine v. Pascal, 94 Ill.App.2d 43, 236 N.E.2d 425 (1968). Since the record is silent in this regard, WITCO has apparently conceded that the IRS had no such knowledge.

This latter approach clearly looks to state law, and again WITCO's unrecorded interest, whether it is deemed a purchase of, or a security interest in, accounts and contract rights, is unperfected and subordinate.

Accordingly, the Government should be awarded judgment in an amount sufficient to satisfy, so far as the fund deposited by NRSC is capable, the remaining tax liability of COOP, plus interest as provided by law, that was incurred under the October 1970 and February 1971 tax assessments and liens. The tax liability, plus interest, owing is presently in an amount in excess of the fund held by this Court. (See Government's Proposed Findings of Fact and Conclusions of Law, pp. 2–3.) The Government, therefore, is entitled to the entire fund. Accordingly, let judgment be entered for the United States.