Nathan R. Sobel, S.
At issue in this accounting proceeding (which has been tried and decision rendered on related issues) is the priority to be afforded to Federal tax liens against com *13 peting State-created liens. The Government has raised the issue of the “ choateness ” of the competing liens, an issue which has been before the United States Supreme Court some 30 times in the past 20 years.
Because of the trend of these decisions, it can well be said that the Supreme Court is the only as well as the ultimate arbiter of the law in this area. The court’s earlier decisions developed the choate lien doctrine to the point where few competing liens against delinquent taxpayers were able to prevail against later Federal tax liens. But in later cases — and noticeably so — the doctrine has been liberalized (Crest Finance Co. v. United States, 368 U. S. 347 [security interest]; United States v. Vermont, 377 U. S. 351 [State tax lien]; Aquilino v. United States, 363 U. S. 509 [mechanic’s lien]).
Finally, and for all purposes at the “invitation” of the Supreme Court, Congress enacted the Federal Tax Lien Act of 1966 (hereafter FTLA; Public Law 89-719 amending Internal Revenue Code of 1954, principally section 6323 [U. S. Code, tit. 26, § 6323], effective November 2, 1966 but applicable retroactively except as it may impair a previously vested right or priority of a perfected competing lien [FTLA, § 114]).
There is no question but that the FTLA was intended to and did relieve certain specified competing lien interests of the “ choateness ” requirement imposed by prior Supreme Court decisions. The question is to what extent.
It will be helpful to discuss the choate lien doctrine pre-1966 as it was developed by court decision and as well the post-1966 effect of FTLA.
The facts are fully stated in the decision of the court heretofore filed. On this issue, only the bare essentials are stated.
Dorothy R. Frawley was both the income beneficiary and the remainderman of two trusts. The principal was payable to her if and only if she reached age 50; if not, her daughter was substituted. Mrs. Frawley did survive, however, and became entitled to the principal on July 15, 1968. Until then she had a remainder interest subject to a condition precedent (EPTL 6-4.10).
While ‘ ‘ contingent ’ ’ on her reaching age 50, that interest was alienable, i.e., assignable (EPTL 6-5.1) there being no restriction in the will (Matter of Vought, 25 N Y 2d 163). Commencing in 1950, long before the remainder became her property, she made some 30 assignments exceeding by far the total value of the principal. This court has decided the relative priorities among these secured creditors. Among such creditors *14 are a few who “perfected” their assignments by recording same in this court (EPTL 13-2.2). The issue to be decided in this proceeding is the priority between these assignees and the Federal tax liens.
There is no issue of time priority. All of the assignments were long prior in time to the filing of the Federal tax liens (U. S. Code, tit. 26, § 6323, subd. [a]). The Government’s claim is that the interests of the assignees despite being antecedent in time were “ inchoate ”; and for that reason not priority in time the Federal tax lien is superior and entitled to priority in payment.
Obviously the critical factor here is the nature of the interest assigned by Mrs. Frawley to her creditors.
It would be pointless to discuss the many cases in which the Supreme 'Court has prior to the FTLA found competing liens to be “ inchoate ”. These are as varied as are the nature of the competing liens — contract, statutory, litigation, etc. No case in the Supreme Court or it seems in any other court has dealt with the ehoateness of an assignment of a future interest in an estate whether contingent or vested. Some cases do however concern assignments of future interests of other kinds such as future acquired property, and proceeds of future sales of property, etc. (See, e.g., United States v. Ball Constr. Co., 355 U. S. 587 [future payments on contract]; United States v. Pioneer Amer. Ins. Co., 374 U. S. 84 [future costs of foreclosure]). Our State courts too have dealt with related issues (Moorstein & Co. v. Excelsior Ins. Co., 31 A D 2d 177, affd. with memo. 25 N Y 2d 651 [after acquired proceeds]; cf. Matter of City of New York [United States-Coblentz], 5 N Y 2d 300 [charging lien, condemnation award]; Matter of Gruner, 295 N. Y. 510, 520 [assignment of proceeds of sale of stock exchange seat under insolvency statute (U. S. Rev. Stat., § 3466; U. S. Code, tit. 31, § 191) priority]).
In the earliest Supreme Court decision dealing with the inchoate lien doctrine, United States v. Security Trust & Sav. Bank (340 U. S. 47), the court held that a competing lien to be choate must be definite in three respects— (1) the identity of the lienor; (2) the property subject to the lien, and (3) the amount of the lien. As applied in Security Bank which concerned a prejudgment attachment, this made sense. As reiterated in a great many later decisions it had limited or no application to the facts of those cases. It has none in this case for reasons now discussed.
There is a basic element of ehoateness from which the three requirements of Security Trust were derived.
*15 That element is loosely referred to as the “no property ” doctrine.
As originally applied by the Supreme Court it dealt with “divestiture” contentions used defensively by competing lienors against the Government’s claims (all claims including taxes) under the insolvency statute (U. S. Rev. Stat., § 3466; U. S. Code, § 191). That statute gave the Government absolute priority over all creditors secured or not. (See New York v. MacLay, 288 U. S. 290; Matter of Lincoln Chair & Novelty Co., 274 N. Y. 353.) The contention was made by competing creditors, as the only defense against the Government’s priority, that the debtor had ‘ ‘ no property ’ ’ interest having already divested himself of the property and that title or possession had already passed to the competing creditor. Some few were successful since courts generally were unsympathetic to the harsh insolvency statute.
The “ choateness ” doctrine was in a sense derived from the “ no property ” doctrine. Under the pre-1966 Federal tax lien statutes, the Government used the ‘1 no property ’ ’ doctrine offensively with respect to the delinquent taxpayer’s future rights, executory contracts, future proceeds, etc. The Government contended that since the delinquent taxpayer had as yet “ no property ” rights in the security, the competing liens could not attach and were therefore “ inchoate ”. (See United States v. Bess, 357 U. S. 51; Aquilino v. United States, 363 U. S. 509 [on remand see 10 N Y 2d 271]; United States v. Foy Constr. Co., 300 F. 2d 207; cf. Matter of Halprin, 280 F. 2d 407.) When applied to commonplace secured commercial transactions where collateral consists of inventory or accounts receivable which might change from day to day, the consequences could be disastrous. The competing lien could not have priority over a filed Federal tax lien with respect to additional advances made or security substituted after tax lien filing. Some of such fears proved groundless (Crest Finance Co. v. United States, 368 U. S. 347). For it was recognized by Crest and lower- court cases that a difference exists between the assignment of present rights involving future consequences and truly future interests. In another context, Judge Breitel’s discussion of this distinction is the clearest explanation of the law in this complex area. (See Stathos v. Murphy, 26 A D 2d 500, affd. without opn. 19 N Y 2d 883.)
The three Security Trust requirements (supra) that the identity of the lienor, the amount of the lien and the property subject to the lien be certain, are extensions of the ‘ ‘ no property ’ ’ doctrine. The Supreme Court in a long series of cases *16 not relevant to this case held that even if the delinquent taxpayer in fact ‘ ‘ owned ’ ’ the collateral, the competing lienor was required to “ perfect ” his lien against the property prior to the filing of the Federal tax lien for the competing lien to be ‘ ‘ choate ’ This meant that a general competing lien on all the debtor’s property was not “ choate ” until it attached to specific property. It meant that if the amount of the competing lien was not as yet determined (as in the case of prejudgment attachments and mechanics’ liens) the Federal tax lien takes priority. (See 6 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5202.05.)
In this regard, a very brief word should be said of some characteristics of the Federal tax lien which are not attributes of a State-created competing lien.
The Federal tax lien although general attaches to all the property of the taxpayer automatically. (For a discussion as to time priorities and super priorities not involved in this case, see 6 Weinstein-Korn-Miller, N. Y. Civ. Prac., supra, pars. 5202.05, 5202.05a.) Thus, unlike a State-created competing lien, nothing further need be done to perfect it against specific property. It is deemed “ perfected ” and “ choate ”. In contrast, even a State judgment lien against personal property requires more than mere filing; there must be in addition a levy by execution or other perfecting acts.
More pertinent to '¡¡his case is the characteristic that the Federal tax lien attaches automatically as well to future, i.e., after acquired property of the taxpayer (Glass City Bank v. United States, 326 U. S. 265). This is because the statute (U. S. Code, tit. 26, § 6321) provides that the tax .lien shall be a lien “ upon all property and rights to property”. “Rights to property ’ ’ include future rights whether equitable, contingent or vested.
Should both the State-created competing lien and the Federal tax lien attach simultaneously when the debtor-delinquent taxpayer ultimately acquires the property, the Federal tax lien receives priority (United States v. Graham, 96 F. Supp. 318, affd. sub nom. California v. United States, 195 F. 2d 530, cert. den. 344 U. S. 831; Matter of Oxford Distr. Co. v. Famous Robert’s, 5 A D 2d 507). This is a characteristic of a sovereign prerogative right.
Another attribute of the Federal tax lien is that it is not affected by State exemptions. Thus it will attach to trust income of a spendthrift trust and to remainder interests inalienable under State law (Leuschner v. First Western Bank & Trust Co., 261 F. 2d 705; Matter of Rosenberg, 269 N. Y. 247).
*17 From what has been discussed it is obvious that the competing liens in this case are not “ choate ” in the Federal sense. An assignment of a future ‘ ‘ contingent ’ ’ interest in a remainder of a trust is an assignment of a truly future interest, not an assignment of present rights. It is true that a “ contingent ” remainder is alienable, i.e., assignable but only to the extent that the nature of the contingency admits (Clowe v. Seavey, 208 N. Y. 496). Where the contingency requires survival to a given date what is assigned before that date is merely a right to proceeds should the condition of survival occur (Stathos v. Murphy, 26 A D 2d 500, 503, supra). At the critical date, that of filing of a Federal tax lien before the estate becomes one in possession, neither the remainderman nor his assignees have any property rights in the principal of the trust. What they do have is an equitable assignment enforceable between the parties but with the inchoate right receiving no or limited recognition in law against third parties.
There seems to be no doubt under the principles discussed that the assignment of a future contingent interest in the principal of a trust does not givé the lien creditor a choate lien. It does not because it cannot: “no property” yet exists. (See Matter of Gruner, 295 N. Y. 510, supra; Moorstein & Co. v. Excelsior Ins. Co., 31 A D 2d 177, affd. 25 N Y 2d 651 [see memo, opn.].) '
The contention of the Government that Mrs. Frawley had 1 ‘ no property ” rights in the remainder when the Federal tax liens were filed and that in consequence the competing liens in this case were inchoate by pre-1966 Federal standards must be sustained. The competing liens and the Federal tax lien having attached simultaneously on July 15, 1968 when Mrs. Frawley’s right to the remainder became her “property”, the Federal tax lien is entitled to priority.
We consider the effect of the FTLA.
The FTLA represents the culmination of extensive efforts by the Bar, Internal Revenue Service and Congress to alleviate many inequities which had resulted from the choate lien doctrine. Progress was surely made with respect to real estate mortgagees, sureties, mechanic’s lienors, State and local real property tax liens and attorneys’ charging liens. Also, with respect to the more sophisticated financial transactions of banks and lending institutions under the Uniform Commercial Code, Congress renounced some but not all the advantages decisions of the Supreme Court had given to the Federal tax liens. However, with respect to other “ security interests ” (U. S. Code, tit. 26, § 6323, subd. [a]; subd. [h], par. [1]) there exists con *18 siderable disagreement as to the extent of the relief afforded by the new enactment. (See Creedon, Assignments for Security and Federal Tax Liens, 37 Fordham L. Rev. 535 [1969]; Coogan, The Effect of the Federal Tax Lien Act of 1966 Upon Security Interests Created Under the Uniform Commercial Code, 81 Harv. L. Rev. 1369 [1968]; Plumb, Federal Liens and Priorities-Agenda for the Next Decade, 77 Yale L. J. [3 parts] 228, 605, 1104 [1967-1968]; Note, Choateness and the 1966 Federal Tax Lien Act, 52 Minn. L. Rev. 198 [1967]; Mordy, Superpriorities Under the Federal Tax Lien Act of 1966 — The Demise of the Choate Lien Doctrine?, A. B. A. Section of Insurance, Negligence and Compensation Law, 1966-1967 Proceedings, p. 127; 6 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5202.05a.)
The FTLA was specifically purposed to correlate the Federal tax lien provisions with the Uniform Commercial Code. According to the committee report (H. R. Rep. No. 1884 89th Congress, 2d Sess.) it was intended that holders of “ security interests ” should have priority “ if they come within the definition of these terms ” and “ whether or not they are in all other respects definite and complete at the time notice of tax lien is filed ” (p. 2). It then states (p. 35): “ The holder of a security interest has priority over a Federal tax lien if, at the time notice of tax lien is filed, the security interest exists within the meaning of section 6323(h)(1).”
The reference is to the definition of “ security interest ”. Section 6323 (subd. [h], par. [1]) after defining a security interest in conformity with the Uniform Commercial Code provides in pertinent part: “ A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation”. (Italics added.) [The meaning of the italicized portion may be better understood from reference to the corresponding section 9-204 of the Uniform Commercial Code: “ A security interest cannot attach until * * * the debtor has rights in the collateral ”.]
The general provisions of the FTLA together with its legislative history, afford a reasonably accurate estimate of congressional intent.
It is obvious (and all the “ experts ” cited supra are in agreement in this regard) that the FTLA did not intend to affect the threshhold requirement that the delinquent taxpayer have ‘ ‘ property rights ’ ’ in the collateral, or as the FTLA puts it, that the property be “ in existence ”, This is not a simple issue as the following cases establish. (United States v. Ball Constr. *19 Co., 355 U. S. 587, supra; Crest Finance Co. v. United States, 368 U. S. 347, supra; Hammes v. Tucson Newspapers, 324 F. 2d 101; Matter of Halprin, 280 F. 2d 407, supra; Rockmore v. Lehman, 129 F. 2d 892; cf. Stathos v. Murphy, 26 A D 2d 500, affd. 19 N Y 2d 883, supra.)
In this ease it has been determined that Mrs. Frawley’s rights in the property were truly future rights. The competing liens based on the assignment made by Mrs. Frawley are therefore inchoate under the FTLA as well as under pre-1966 decisions of the courts.
Once however it is determined that the taxpayer has property rights in the collateral, then deference to local law will loom very large under FTLA in determining whether the antecedent competing lien is 1 ‘ choate ’ ’. For the Government has renounced all other advantages given to it by the prior decisions on choateness and has placed the Federal tax lien in the shoes of a “ subsequent judgment lien arising out of an unsecured obligation ” as such rights are determined between competing State-created liens under “ local law”. Predictably this will create as many problems for our State courts as were created for the Federal courts by the choate lien doctrine.
The decree shall provide that the Government tax liens with interest computed to the date of the decree shall have first prioritv in payment prior to all competing liens. The decree shall afford to the Conservator the right to apply for refund pursuant to applicable statutes.