**In re McTYRE GRADING &
PIPE, INC., Debtor.**

**Richard D. ELLENBERG, As Trustee
of McTyre Grading & Pipe, Inc.,
Plaintiff,**

**v.**

**J.M. TULL METALS; State of Georgia,
Department of Labor; Vulcan Metals
Company; Yancey Brothers Corpora-
tion; City of Powder Springs of the
State of Georgia; Jim McDuffy, Tax
Commissioner and Ex–Officio Sheriff of
Cobb County; Atlanta Tool & Jack
Sales and Service, Inc.; State of Geor-
gia, Department of Revenue; United
States of America, Internal Revenue
Service, Defendants.**

Bankruptcy No. 91–75149.
Adversary No. 94–6228.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

March 13, 1996.

Michael N. Wilcove, U.S. Dept. of Justice, Tax Division, Washington, DC, Amy Berne Kaminshine, U.S. Attorney's Office, Atlanta, GA, for U.S.

Michael J. Bowers, W. Wright Banks, Jr., Attorney General's Office, Atlanta, GA, for Georgia Department of Labor and Department of Revenue.

Kate Rogers, Cobb County Attorney's Office, Park Huff, Tax Commissioner of Cobb County, Marietta, GA, for Cobb County Tax Commissioner.

Richard W. Calhoun, Brock & Clay, P.C., Marietta, GA, for City of Powder Springs.

### ORDER

MARGARET H. MURPHY, Bankruptcy Judge.

This adversary proceeding is before the court on the motion of the United States on behalf of the Internal Revenue Service ("IRS") for summary judgment and the cross motion for Summary Judgment of the Cobb County Tax Commissioner ("Cobb County"). Responses were filed by the Georgia Department of Revenue and the Georgia Department of Labor (collectively "Georgia") and by the City of Powder Springs, Georgia. ("Powder Springs"). Plaintiff filed no response to either motion for summary judgment; accordingly, the motion is deemed unopposed by Plaintiff. LR 220–1 NDGa, incorporated in BLR 705–2 NDGa. As this adversary proceeding represents a lien contest among the IRS, Georgia, Cobb County and Powder Springs, all of whom have filed briefs setting forth their respective positions, Plaintiff's response was unnecessary.

Powder Springs asserts that motion of the IRS for summary judgment should be denied because it was not timely filed. Pursuant to the initial form order entered in this adversary proceeding, the parties were directed to file motions for summary judgment within 20 days of the close of discovery. Discovery in

this adversary proceeding closed July 18, 1994, but the motion for summary judgment was not filed until February 21, 1995. That motion was, however, filed within 30 days of the entry of an order on Plaintiff's motion for summary judgment, which had been timely filed. Additionally, Powder Springs cited no prejudice resulting from the delay in the filing by the IRS of a motion for summary judgment. In the instant case, where the facts are undisputed and only legal issues remain, a motion for summary judgment enables the court to dispose of the issues more efficiently than if a trial were required. No other party objected to the timeliness of the motion of the IRS. Powder Springs presented no facts which would support a denial of a request to allow the late-filed motion for summary judgment; therefore, the timeliness argument is without merit.

Plaintiff, as trustee in Debtor's Chapter 11 case, filed this adversary proceeding to determine the validity, priority and extent of liens. The complaint requests such determination with respect to prepetition and postpetition accounts receivable and to proceeds from the sale of equipment which was property of the estate. Specifically, the parties seek a determination of the priority of tax liens as to three categories of property of the estate: prepetition property which Debtor acquired before the IRS tax liens arose; prepetition property which Debtor acquired after the IRS tax liens arose; and postpetition property of the estate. Of the multiple defendants in this adversary proceeding, the priority of liens of only the IRS, Georgia, Cobb County and Powder Springs remain to be determined.[1]

## STATEMENT OF FACTS

IRS asserts the following liens against the property in the hands of Trustee:

| Nature of tax | Period for which Tax Due | Amount |
| --- | --- | --- |
| Employment taxes | 4th quarter, 1989 | $53,821.28 |
| Employment taxes | 1st quarter, 1990 | $ 802.29 |
| Employment taxes | 3rd quarter, 1990 | $47,438.62 |
| Employment taxes | 4th quarter, 1990 | $59,204.78 |
| Excise taxes | Ending 7/31/90 | $ 918.32 |

Georgia asserts the following liens against the property in the hands of Trustee:

| Nature of tax | Period for which Tax Due | Amount |
| --- | --- | --- |
| Penalties related to withholding taxes | 4/1/88–12/31/89 | $ 9,103.43 |
| Unemployment insurance interest and penalty | 4th quarter 1989 | $ 9.00 |
| Unemployment insurance interest and penalty | 1st quarter 1990 | $ 7,071.49 |
| Unemployment insurance interest and penalty | 3rd quarter 1990 | $ 3,720.69 |
| Unemployment insurance interest and penalty | 4th quarter 1990 | $ 1,641.38 |

Cobb County asserts the following liens against the property in the hands of the Trustee:

| Nature of tax | Period for which Tax Due | Amount |
| --- | --- | --- |
| *Ad valorem* | 1990 | $28,456.96 |
| *Ad valorem* | 1991 | $14,121.69 |

Powder Springs asserts a lien against the property in the hands of the Trustee for *ad valorem* taxes for 1991 in the amount of $4,836.41.

The assessment dates for the IRS liens are as follows:

| Nature of tax | Period for which Tax Due | Assessment Date |
| --- | --- | --- |
| Employment taxes | 4th quarter, 1989 | 3/26/90 |
| Employment taxes | 1st quarter, 1990 | 6/11/90 |
| Employment taxes | 3rd quarter, 1990 | 12/17/90 |
| Employment taxes | 4th quarter, 1990 | 3/18/91 |
| Excise taxes | Ending 7/31/90 | 9/17/91 |

A Notice of Tax Lien for all the above IRS taxes was recorded[2] March 30, 1991.

The dates relevant to priority of Georgia's liens are as follows:

1. J.M. Tull Metals, Inc., Vulcan Materials Company, and Atlanta Tool & Jack Sales and Service, Inc. are in default as a result of their failure to file an answer or otherwise defend. The judgment lien of Yancey Brothers Corporation was avoided as a preferential transfer by order entered January 10, 1995.

2. For purposes of this opinion, as Debtor owned no real property and, therefore, the tax liens attached only to Debtor's personal property, the term "recorded" means recorded on the General Execution Docket ("GED") of the appropriate county.

| Nature of Tax | Period Tax Due | Assessment Date | Date Recorded |
|---|---|---|---|
| Withholding tax penalties | 4/1/88–12/31/89 | 3/22/90 | 6/12/90 |
| Unemployment Ins. (interest and penalty) | 4th quarter 1989 | 1/31/90 | 7/2/90 |
| Unemployment Ins. (interest and penalty) | 1st quarter 1990 | 4/30/90 | 8/29/90 |
| Unemployment Ins. (interest and penalty) | 3d quarter 1990 | 7/31/90 | 4/2/91 |
| Unemployment Ins. (interest and penalty) | 4th quarter 1990 | 1/31/91 | 6/4/91 |

The dates relevant to priority of· Cobb County's liens are as follows:

| Year and Nature of tax | Valuation Date | Due Date | Date County Tax Digest Approved By Commissioner |
|---|---|---|---|
| Ad valorem 1990 | 1/1/90 | 3/1/90 | 8/9/90 |
| Ad valorem 1991 | 1/1/91 | 3/1/91 | 8/19/91 |

Powder Springs' 1991 *ad valorem* taxes were dependent upon Cobb County's property tax digest (see above). Powder Springs first sent its tax bill to Debtor October 7, 1991.

### CONCLUSIONS OF LAW

### PREPETITION PROPERTY ACQUIRED BEFORE LIEN CREATION

■ The determination of property rights in the assets of a debtor's estate is generally a matter of state law. *Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1978). Once a federal tax lien attaches, however, the priority of other liens in respect to the federal tax liens is determined according to federal law. *Aquilino v. U.S.*, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *Haas v. IRS*, 31 F.3d 1081 (11th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2578, 132 L.Ed.2d 828 (U.S.1995). *See also, U.S. v. City of New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1953).

■ The Internal Revenue Code ("IRC") provides that a lien upon all debtor's property arises in favor of the United States as to any tax unpaid after demand. 26 U.S.C. § 6321. The federal tax lien arises upon assessment.[3] 26 U.S.C. § 6322. As against purchasers, holders of security interests, mechanics lienors, and judgment lien creditors, the federal tax lien is effective only after notice of the federal tax lien is recorded

as provided in § 6323(f). 26 U.S.C. § 6323(a). The tax liens of Georgia, Cobb County and Powder Springs, however, are not liens for which recordation of such a notice is required. Thus, the applicable date for determining federal tax priority as against nonfederal taxes is the date of assessment.

With certain exceptions not relevant to the facts in this adversary proceeding, Congress has not promulgated a statute which expressly provides a method for determining priority of federal tax liens as against other liens. *New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520. The U.S. Supreme Court, through a series of cases, has defined the principles to be applied in determining such priority. An early case defines the cardinal principle of "the first in time is the first in right." *Rankin v. Scott*, 25 U.S. 177, 12 Wheat. 177, 6 L.Ed. 592 (1827) (Chief Justice Marshall):

> The principle is believed to be universal, that a prior lien gives a prior claim, which is entitled to prior satisfaction, out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him in a court of law or equity to a subsequent claimant.

25 U.S. (12 Wheat) at 179. This principle of "first in time, first in right" has been reiterated in all subsequent U.S. Supreme Court cases dealing with the subject. *See for example, New Britain*, 347 U.S. at 85, 74 S.Ct. at 370; *U.S. v. Pioneer American Insurance Co.*, 374 U.S. 84, 87, 83 S.Ct. 1651, 1654, 10 L.Ed.2d 770 (1963); *U.S. v. Vermont*, 377 U.S. 351, 354, 84 S.Ct. 1267, 1269, 12 L.Ed.2d 370 (1963).

■ In applying the "first in time, first in right" principle, the U.S. Supreme Court established that the priority of liens depends ·upon the time such lien attaches to the property in question and becomes choate. *New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520; *Pioneer*, 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770; *Vermont*, 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370. A lien is choate when the identity of the lienor, the property subject to the lien and the amount of the lien is

---

**3.** The IRC provisions regarding assessment are found at 26 U.S.C. § 6201, *et seq.*

established. *New Britain,* 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520; *Pioneer,* 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770; *Vermont,* 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370. The U.S. Supreme Court has rejected attempts by states to avoid or mutate, by promulgation of state statutes, application of the choateness principles. *U.S. v. Buffalo Savings Bank,* 371 U.S. 228, 83 S.Ct. 314, 9 L.Ed.2d 283 (1963);[4] *Pioneer,* 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770.[5] Similarly, the Court has rejected attempts by the IRS to engraft additional requirements upon non-federal lienholders or to redefine the elements of choateness. *Vermont,* 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370.[6]

In 1983, in a maneuver similar to Vermont's, the Georgia legislature amended the Georgia Public Revenue Code "to provide for the time of attachment and priority of tax liens." Ga.L.1983, p. 1834. The Georgia legislature amended O.C.G.A. § 48–2–56, which previously failed to include any provisions as to the time of attachment of tax liens. The amended statute also described the types of liens which were entitled to the protection of constructive notice through recording. As in the *Vermont* case, Georgia's statutes are modeled after 26 U.S.C. § 6323 of the IRC. Nevertheless, federal law and the principles of choateness, rather than the Georgia statute governs as against the IRS, the time that the nonfederal tax liens attach and become choate.

With respect to whether the IRS is entitled to the protection of constructive notice of the nonfederal tax liens by recording, however, state statutes control. *Prewitt v. U.S.,* 792 F.2d 1353 (5th Cir.1986); *U.S. v. Creamer Industries,* 349 F.2d 625 (5th Cir.1965).[7] If a federal tax lien falls within the definition of a type of lien protected by state recording statutes, IRS is accorded that protection when determining the date upon which the nonfederal lien was perfected.[8] *Id.*

■ Therefore, federal law will be used to determine the dates that the nonfederal tax liens became choate. State law is applicable to determine whether the IRS is entitled to the additional protection of recording before the nonfederal tax lien is effective against the IRS. As a Georgia statute make state liens prior to county, school and municipal liens, initial focus will be on the relative priority between federal and Georgia liens.

## IRS V. GEORGIA LIENS

■ Georgia's lien for penalties related to withholding taxes was assessed March 22, 1990. O.C.G.A. 48–2–56(f) is relevant in determining its priority as against the federal tax liens:

The lien for taxes imposed by the provisions of Article 5 of Chapter 7 of this title, relating to withholding taxes, shall:

(1) Arise and attach to all property of the defaulting employer or other person re-

---

4. In the *Buffalo* case, the U.S. Supreme Court rejected New York's attempt to accord priority to its unpaid real estate taxes by providing by statute that such taxes shall be deemed "expenses" of sale.

5. The *Pioneer* Court held that the requirement that a lien be choate applies to all liens, even those protected by 26 U.S.C. § 6323(a). The *Pioneer* decision involved a real property foreclosure by a mortgagee. Federal tax liens were recorded after the mortgage was recorded, after default on the mortgage, after filing the foreclosure suit but before entry of the court order which determined the amount of the attorneys fee provided for in the mortgage. The U.S. Supreme Court held that the claim for the attorneys fee was subordinate to the federal tax liens because it was inchoate, i.e. indefinite as to amount, as of the date the federal tax liens were recorded. Under state law, a lien for the attorneys fees became enforceable upon the debtor's default.

6. The *Vermont* Court crystalized the concept that, with respect to competing federal and nonfederal tax liens, *only* the choateness principle would be applied. The *Vermont* case involved a state tax lien statute which was almost identical to 26 U.S.C. § 6322 and § 6323. The IRS sought to impose an additional requirement that the nonfederal tax lienor must actually have possession of the relevant property. The U.S. Supreme Court refused to engraft any additional requirement and refused to redefine choateness as it applies to nonfederal tax lienors.

7. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981), renders decisions of the Fifth Circuit issued prior to September 30, 1981, binding precedent for the Eleventh Circuit.

8. In both the *Prewitt* and *Creamer* cases, the Fifth Circuit applied Texas recording statutes. Georgia's statutes regarding recording of various state tax liens contain provisions different from those of Texas.

quired to deduct and withhold on the date of the assessment of the taxes by operation of law or by action of the commissioner;

(2) Not be superior to the lien of a prior recorded instrument securing a bona fide debt; and

(3) Not be superior to the lien of a subsequent bona fide purchaser or lender for value recorded prior to the time the execution for the tax has been entered on the general execution docket in the office of the superior court of the county in which the property affected is located.

Before the lien provided for in this subsection shall attach to real property it shall be recorded in the county where the real property is located.

The IRS asserts that Georgia's lien for tax withholding penalties was not effective against the IRS until it was recorded June 13, 1990. But O.C.G.A. § 48–2–56(f) does not appear to accord the IRS such protection. Georgia's withholding lien was choate when it was assessed March 22, 1990: the identity of the lienor was established; the property subject to the lien was established; and the amount of the lien was established. Under O.C.G.A. § 48–2–56(f)(2), the IRS does hold a *bona fide* debt but no instrument evidencing that debt was recorded until March 30, 1991. As the IRS is not a *bona fide* purchaser or lender for value, O.C.G.A. § 48–2–56(f)(3) is inapplicable. As the property to which the IRS lien attached is not real property, the final sentence of O.C.G.A. § 48–2–56(f) is also inapplicable. Therefore, as Georgia's lien for tax withholding penalties attached and became choate prior in time to any IRS tax lien, it has priority over the IRS tax liens.

With respect to Georgia's liens for unemployment insurance taxes, O.C.G.A. § 34–8–167(d) is relevant in determining priority as against the IRS tax liens:

The amount of any contributions not paid when due, including any interest, penalties, and costs, shall constitute a lien upon all property and rights to property and upon all after-acquired property and rights to property, both real and personal, of the employer liable for such contributions. The lien shall attach and be perfected as of the date such contributions become due and shall have parity with other tax liens and be prior, superior, and paramount to all other liens or encumbrances attaching to any of such property; provided, however, the lien shall not be preserved against purchasers, judgment creditors, pledgees, subsequent tax liens, or other liens or encumbrances until an execution for such contributions has been entered on the general execution docket.

The IRS holds a "subsequent tax lien" as described in the last sentence of O.C.G.A. § 34–8–167(d) and may take advantage of the requirement that the lien for unemployment insurance taxes must be recorded in order to have priority.[9] Therefore, pursuant to O.C.G.A. § 34–8–167(d), Georgia's liens for unemployment insurance taxes were not effective against the IRS until they were recorded in the GED.

The *ad valorem* taxes of Cobb County and Powder Springs arose and attached upon the date of valuation. O.C.G.A. § 48–2–56(d). Those taxes did not become choate, however, until the county's tax digest was approved by the State Revenue Commissions as required by O.C.G.A. § 48–5–342, *et seq.,* because the amount of the tax is subject to change until the tax digest is approved.[10]

---

9. O.C.G.A. § 34–8–167(d) contains a "self-assessing" mechanism similar to that considered in *Priest v. Progressive Savings & Loan Association,* 712 F.2d 1326 (9th Cir.1983) and in *In re Alliance Transportation, Inc.,* 47 B.R. 743 (Bankr. N.D.Ga.1985). In *Priest,* the Ninth Circuit Court held that, under California's self-assessing statute, a tax does not arise and therefore cannot become choate against the IRS until some further administrative step is taken to establish the lien. In this district, in the *Alliance Transportation* case, the Honorable A.D. Kahn found *Priest* unpersuasive, holding that a self-assessing statute fulfilled all the requirements of choateness. In

the instant case, the self-assessing mechanism is not relevant to determining priority, as O.C.G.A. § 34–8–167(d) requires the state to take the additional step of recording an execution on the GED.

10. The amount of the tax is also subject to change until the millage rate is set by the county. The date the Cobb County and Powder Springs millage rates were set, however, was not disclosed, not argued by the parties and, therefore, does not appear to be a factor in their priority contest.

*See, Strickland v. Douglas County,* 246 Ga. 640, 272 S.E.2d 340 (1980); *Griggs v. Greene,* 230 Ga. 257, 197 S.E.2d 116 (1973). Thus, Cobb County's lien for 1990 *ad valorem* taxes became choate when the tax digest was approved August 9, 1990, and the liens of Cobb County and Powder Springs for 1991 *ad valorem* taxes became choate when the tax digest was approved August 19, 1991.

As set forth above, the priority of federal tax liens *vis a vis* nonfederal tax liens is determined according to federal law, which centers on choateness. Georgia argues, however, that the priority of state tax liens *vis a vis* other state tax liens should be determined according to state law. The Georgia priority system for state tax liens is based upon the statutes passed by its legislature— not choateness; therefore, under the principles of *Butner v. U.S.,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136, Georgia's argument is persuasive.

### INTRA-STATE TAX LIENS

■ O.C.G.A. § 48–2–56 sets forth the Georgia law regarding priority of state tax liens:

(a) Except as otherwise provided in this Code section, liens for all taxes due the state or any county or municipality in the state shall arise as of the time the taxes become due and unpaid and all tax liens shall cover all property in which the taxpayer has any interest from the date the lien arises until such taxes are paid.

(b) Except as otherwise provided in this Code section, liens for taxes are superior to all other liens and shall be paid before any other debt, lien, or claim of any kind. Liens for taxes shall rank among themselves as follows:

(1) Taxes due the state;

(2) Taxes due counties of the state;

(3) Taxes due school and other special tax districts of the state; and

(4) Taxes due municipal corporations of the state.

. . . . .

(d)(1) Liens for any ad valorem taxes shall cover the property of taxpayers liable to tax from the time fixed by law for valuation of the property in each year until such taxes are paid[.]

(2) The lien for any ad valorem tax shall not be superior to the title and operation of a security deed when the tax represents an assessment upon property of the taxpayer other than property specifically covered by the title and operation of the security deed.

(3) When real property located within this state is transferred between the date on which any ad valorem tax lien on the property vests and the date on which the tax evidenced by the tax lien becomes due and payable, the ad valorem tax lien on the transferred property shall not extend to cover any other real property of the transferor.

Pursuant to the provisions of O.C.G.A. § 48–2–56, Georgia's unemployment tax lien for the first quarter of 1990 attached when the tax became due, which was April 30, 1990. Georgia's brief concludes, therefore, that Georgia's lien has priority over Cobb County's *ad valorem* tax lien because Cobb County's lien was not choate against the IRS until August 9, 1990, when the county's tax digest was approved by the State Revenue Commissioner. Pursuant to O.C.G.A. § 48–2–56(d), however, the lien for *ad valorem* taxes arises and attaches to the property at "the time fixed by law for valuation," which in the instant case was January 1, 1990.[11] Moreover, nowhere in the Georgia statutes is the principle of choateness adopted, nor has it been adopted by the Georgia Supreme Court. The Cobb County *ad valorem* tax lien is prior in time to the Georgia unemployment tax lien for the first quarter of 1990.

■ Nevertheless, O.C.G.A. § 48–2–56(b) apparently accords priority to the state tax lien even though it arose after the Cobb County tax lien. Although Justice Marshall described "first in time, first in right" as a "universal principle," the court in *New Britain* recognized that the principle could be defeated by legislation. No provision in O.C.G.A. § 48–2–56 tends to indicate that subsection (b) applies only to various state tax liens of even date. The intent appears to

---

**11.** Even if *ad valorem* tax liens were governed by O.C.G.A. § 48–2–56(a), the *ad valorem* tax lien arose and attached March 1, 1990, when the tax became due.

be to accord priority to the tax liens of the State of Georgia regardless of date.[12] Therefore, the Georgia lien for unemployment insurance taxes for the first quarter of 1990 has priority over Cobb County's *ad valorem* taxes for 1990.

Accordingly, as to property acquired by Debtor before the tax liens arose, **Table 1** sets forth the order of priority for the tax liens of the IRS, Georgia, Cobb County and Powder Springs.

## Table 1

| Tax lien Claim of | Amount and Kind of Tax | Applicable Tax Period | Relevant Date & Rationale |
|---|---|---|---|
| Georgia | $ 9,103.43 withholding penalties | 4/1/88– 12/31/89 | 3/22/90—assessment and O.C.G.A. § 48–2–56(f)(2) |
| IRS | $53,821.28 Employment | 4TH qtr 89 | 3/26/90—assessment |
| IRS | $ 802.29 Employment | 1ST qtr 90 | 6/11/90—assessment |
| Georgia | $ 9.00 Unempl.Ins. | 4TH qtr 89 | 7/2/90—recorded after prior IRS assessment |
| Georgia | $ 7,071.49 Unempl.Ins. | 1ST qtr 90 | 8/29/90—recorded after above |
| Cobb County | $28,456.96 *Ad Valorem* | 1990 | 8/9/90 as to IRS when tax digest approved, but subordinate to taxes due the State [O.C.G.A. § 48–2–56(b) ][13] |
| IRS | $ 918.32 Excise | 7/31/90 | 9/17/90—assessment |
| IRS | $47,438.62 Employment | $3^{D}$ qtr 90 | 12/17/90—assessment |
| IRS | $59,204.78 Employment | 4TH qtr 90 | 3/18/91—assessment |
| Georgia | $ 3,720.69 Unempl. Ins. | $3^{D}$ qtr 90 | 4/2/91—recordation |
| Georgia | $ 1,641.38 Unempl.Ins. | 4TH qtr 90 | 6/4/91—recordation |
| Cobb County | $14,121.69 *Ad Valorem* | 1991 | 8/19/91 as to IRS when tax digest approved, but subordinate to taxes due the State [O.C.G.A. § 48–2–56(b) ] |

12. Prior to the 1983 amendment of O.C.G.A. § 48–2–56, the ranking of tax liens among themselves was part of subsection (a). The 1983 amendment created subsection (b) but the wording of the provision was otherwise essentially unchanged. As the 1983 amendment added elements of time to the other subsections of O.C.G.A. § 48–2–56, but not to O.C.G.A. § 48–2–56(b), the Legislature's intent would appear to be that tax liens of the State of Georgia have priority over county or municipal liens, regardless of date.

13. As choateness is a principle of federal law, it does not apply as between state, county and municipal taxes; therefore, the date the tax digest was approved is irrelevant in determining priority as between the state and the county.

| Powder Springs | $ 4,836.41 *Ad Valorem* | 1991 | same as 1991 Cobb taxes but subordinate to Cobb |
|---|---|---|---|

## PREPETITION PROPERTY ACQUIRED POST LIEN CREATION

██ As to property acquired prepetition after the tax liens arose, IRS asserts its priority against all other liens, relying on *U.S. v. McDermott*, 507 U.S. 447, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993). Cobb County and Georgia argue that *McDermott* is inapplicable in the instant case because *McDermott* addressed a contest between a private consensual lien and a federal tax lien instead of a contest among federal and state tax liens, all of which are non-consensual.

*McDermott* stands for the proposition that liens cannot attach to after-acquired property until the debtor acquires rights in such property. Therefore, as to after-acquired property, pre-existing liens attach simultaneously when the debtor acquires rights in the property. As a result, because the liens attach simultaneously, no non-federal lien could attach before the federal tax lien and no non-federal lien could, therefore, become choate before the federal tax lien.

The challenges of Georgia and Cobb County to the applicability of *McDermott* in the instant case are without merit. The *McDermott* principles do not rely solely upon the differences between consensual and non-consensual liens, but instead rely primarily upon the choateness principles which underlie all lien contests with federal tax liens. Other cases have applied the same analysis used in *McDermott* in contests between state and federal tax liens. *U.S. v. Graham*, 96 F.Supp. 318 (S.D.Cal.), *aff'd*, 195 F.2d 530 (9th Cir.), *cert. denied*, 344 U.S. 831, 73 S.Ct. 36, 97 L.Ed. 647 (1951); *In re Rosenberg's Will*, 308 N.Y.S.2d 51, 62 Misc.2d 12 (Surrogate Court Kings County 1970); *Iowa Fair Plan v. U.S.*, 257 N.W.2d 626 (Iowa 1977). Therefore, as to after-acquired prepetition property of Debtor, IRS tax liens are prior to all others.

## PROPERTY ACQUIRED POSTPETITION

██ With respect to property of the estate acquired postpetition, the IRS primes all others pursuant to a cash collateral order entered October 16, 1992. In that order, in exchange for permitting Debtor to use cash collateral in which IRS had an interest, IRS was granted a replacement lien in all accounts receivable arising postpetition. Therefore, as to postpetition property, to the extent of the cash collateral expended by Debtor postpetition, IRS's tax lien is prior to all others.

The IRS also seeks summary judgment as to the priority of its tax liens over the administrative expense claims of Georgia, Cobb County and Powder Springs. No such administrative expense claims have yet been filed, however. Therefore, summary judgment on this issue is premature. Accordingly, it is hereby

ORDERED that as to property acquired by Debtor before the tax liens arose, the following is the order of priority for the tax liens of the IRS, Georgia, Cobb County and Powder Springs:

|  | Amount |
|---|---|
| Georgia | $ 9,103.43 |
| IRS | $53,821.28 |
| IRS | $ 802.29 |
| Georgia | $ 9.00 |
| Georgia | $ 7,071.49 |
| Cobb County | $28,456.96 |
| IRS | $ 918.32 |
| IRS | $47,438.62 |
| IRS | $59,204.78 |
| Georgia | $ 3,720.69 |
| Georgia | $ 1,641.38 |
| Cobb County | $14,121.69 |
| Powder Springs | $ 4,836.41 |

As to property acquired prepetition by Debtor after the federal tax liens arose, the IRS tax liens are prior to all others. As to postpetition property, to the extent of the cash collateral expended by Debtor postpetition, the tax liens of the IRS are prior to all others. It is further

ORDERED that, as to the priority of the administrative expense claims of IRS, Georgia, Cobb County or Powder Springs, the motion of the IRS for summary judgment is DENIED as premature.

IT IS SO ORDERED.